UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**ALBERT JOHN LUXFORD**, and<br>**LANA MARIE LUXFORD**,<br><br>Debtors. | Case No. **05-63105-13** |

# MEMORANDUM OF DECISION

At Butte in said District this 29th day of March, 2007.

On September 13, 2005, Debtors filed this chapter 13 case. On March 22, 2006, upon the consent of the chapter 13 trustee, the Court confirmed Debtors' amended chapter 13 plan. On October 16, 2005, the chapter 13 trustee, Robert G. Drummond ("Drummond"), of Great Falls, Montana, filed a postconfirmation motion, doc. no. 44, to dismiss this case. Debtors, through their attorney, H. James Oleson ("Oleson"), of Kalispell, Montana, filed a response, doc. no. 45, to the trustee's motion to dismiss and set the matter for hearing on November 9, 2006. On October 31, 2006, Drummond filed nine exhibits, doc. no. 46, for the hearing. On behalf of the Debtors, Oleson filed a consensual motion to continue the hearing from November 9, 2006, to January 11, 2007. The Court approved the continuance. On December 28, 2006, Debtors filed an amended Schedule B with the Court, doc. no. 53. Drummond, on January 3, 2007, filed a motion for judicial notice of adjudicative facts involving Debtors prior bankruptcy filings that the Court approved on January 4, 2007. A hearing was held in this case on Drummond's motion to dismiss and Debtors' objection thereto on January 11, 2007, in Missoula. Exhibits 1 through 9

1

were admitted without objection. One of the Debtors, Lana Luxford, testified. After the conclusion of the hearing, the parties requested time to file briefs in support of their respective positions. The briefs have been filed. The Court has considered the motion, the objections thereto, the testimony, the exhibits and the briefs and this contested matter is ready for a decision. This memorandum contains the Court's findings of facts and conclusions of law.

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334.

## FACTS

Debtors submit the following statement of facts in their brief:

The following is a chronological draft in chart form of the efforts by the Debtors, to-wit:

| Date | Case No. | Facts | Filed By |
| --- | --- | --- | --- |
| 9/94 | 94-51762 | Chapter 13 Petition | Gregory E. Paskell, Kalispell |
| 1996 | 96-40255 | Chapter 13 Petition | Gregory E. Paskell, Kalispell |
| 1996 | 96-42216 | Conversion of Case No. 96-40255 from Chapter 13 to Chapter 7 | |
| 2001 | 01-51656 | Chapter 13 Petition | Daniel S. Morgan, Missoula |
| 2003 | 03-63684 | Chapter 13 Petition | Pro se |
| 2/05 | | First theft of 1993 Cadillac Seville | |
| 9/13/05 | 05-63105 | Chapter 13 Petition | H. James Oleson, Kalispell |
| 1/06 | | 1993 Cadillac Seville returned to Debtors | |
| 6/29/06 | | 1993 Cadillac Seville plus misc and sundry items stolen from the yard of Debtors | |

2

        10/16/06                    Trustee's Motion To Dismiss

        12/28/06                    Debtor's [Amendment of] Schedules

### EXPLANATION

    **Case No. 94-51762**[1] was filed in 1994 by Mr. Gregory E. Paskell; it was a Chapter 13; apparently certain documents were not filed in a timely manner and the petition was dismissed by the Court.

    **Case No. 96-40255**[2] was subsequently filed by Mr. Paskell while they lived in Flathead County; the Debtors moved from the Flathead area to the Great Falls area; case was subsequently scheduled for a Hearing in Great Falls by the Court; Mr. Paskell failed to appear for the first hearing; the Court rescheduled the hearing; again Mr. Paskell failed to appear and this case was thus converted to Chapter 7 as **Case No. 96-42216**.[3]

    **Case No. 01-51762 (sic) (actually Case No. 01-51656)**[4] was commenced by Mr. Daniel S. Morgan as a Chapter 13; for whatever reasons, Mr. Morgan recommended that this case be converted to a Chapter 7 and only Lana Luxford be named as Debtor, which happened.

---

[1] The narrative provided is completely inaccurate. Debtors filed a chapter 13 case on December 9, 1994. Debtors' chapter 13 plan was confirmed on June 13, 1995. Trustee, after confirmation of Debtors' plan, moved to dismiss Debtors' case on January 19, 1996, nearly 7 months after confirmation.

[2] Debtors filed this chapter 13 case on February 12, 1996. The Court sustained the Trustee's objections to confirmation on September 19, 1996, and dismissed the case.

[3] Debtors filed a new chapter 13 case on October 18, 1996, and the Court confirmed Debtors' chapter 13 plan on March 25, 1997. This case was converted to a chapter 7 case on November 18, 1997, for which Debtors received a discharge on March 11, 1998].

[4] Debtors filed this chapter 13 case on May 25, 2001, and the Court confirmed a chapter 13 plan December 28, 2001. Debtors filed a motion to dismiss on October 15, 2002, which the Court granted. Debtors paid $3,680 in plan payments that were distributed to creditors pursuant to the Trustee's report filed July 18, 2003. [This case was not converted to a chapter 7 case, but was dismissed even after the chapter 13 plan was confirmed].

**Case No. 03-63684**[5] was a Chapter 13 filed by the Debtors Pro se; however, because of problems, this case was subsequently dismissed.

The present case, i.e. **Case No. 05-63105** was filed by H. James Oleson on September 13, 2005 and is presently in effect. As the records show, in September of 2005, the Debtors had possession of a 1993 Cadillac motor vehicle which was stolen , subsequently located in South Dakota and was recovered and returned to the Debtors in Flathead County in January of 2006. The Cadillac was once again stolen on the 29th of June, 2006, with items listed in the following paragraph, located in the Cadillac and in fact stolen.

It was subsequently determine that the following items were inside the trunk of the Cadillac at the time of the 2nd theft, i.e. tape measures; pliers-set of 4; tool kit-tools in plastic case for emergency; wearing apparel; a Circley Saddle; and a gel seat-blue gel shock absorber for Western Saddles.

These items had not been listed on Schedule B initially because they were not in the physical possession of the Debtors at the time of the filing of **Case No. 05-63105**, having been stolen. The Debtors subsequently filed an insurance claim for the value of these items in June, 2006. In the meantime, the [chapter 13 trustee] filed a Motion To Dismiss based on fraud and abuse of the Bankruptcy process.

Drummond states his version of the facts as follows:

I. FACTS

1. The Debtors, Albert John and Lana Marie Luxford, filed the instant Chapter 13 Bankruptcy case on September 13, 2005. The Court has granted the Trustee's Motion for Judicial Notice of Adjudicative Facts, taking judicial notice of the Debtors' prior five bankruptcy cases. This is the Debtors' sixth bankruptcy filing since 1994.

2. The Trustee filed a Motion to Dismiss this case on October 16, 2006 (Docket No. 44). The Debtors objected to the Motion to Dismiss (Docket No. 45). Hearing was held on the Trustee's Motion to Dismiss on January 11, 2007. At hearing, Lana Luxford testified. Exhibits 1 through 9 were admitted without

---

[5] Debtors filed this chapter 13 case pro se on November 18, 2003. After several motions to dismiss and amendments to schedules and after the Court directed Debtors to file an amended plan to cure Trustee's objections, Debtors failed to file an amended plan and the Court dismissed the case on June 4, 2006. Debtors moved the Court to reconsider the dismissal but failed to appear for the hearing so the Court denied Debtors' motion for reconsideration on July 16, 2004.

objection.

      3. The Trustee alleges that the Debtors procured the Order confirming their Chapter 13 plan by fraud. The Trustee alleges that the Debtors purposely omitted assets and transactions from their bankruptcy schedules and Statement of Financial Affairs. The Trustee alleges that the schedules and Statements of Financial Affairs were relied upon by the Court and the Trustee which resulted in the Court Order confirming the Debtors' Chapter 13 plan. Because of the omitted assets and transactions, the plan that was confirmed did not meet the requirements of the best interests of creditors test appearing at 11 U.S.C. § 1325(a)(4). Further, the Trustee alleges that the Debtors have abused the bankruptcy process and failed to comply with their duties as they exist at F.R.B.P. 1007.

      4. The Debtor, Lana Marie Luxford, testified that this was her sixth Chapter 13 bankruptcy filing. Lana testified that after the instant case was filed, she had submitted a theft report to her insurance company seeking reimbursement for the value of property which has been stolen from her home. Exhibit No. 2 relates that a theft occurred on June 29, 2006. Attached to Exhibit 2 is a personal property summary sheet listing the items that the Debtor stated were stolen from her home in the June 2006 theft. Included on that list are several items of property which the Debtor testified were purchased in January and February of 2005 - a date prior to the instant filing of the bankruptcy case. The remaining items, with the exception of a leather lined coat valued at $350.00, were purchased after the bankruptcy filing.

      5. Lana testified that the property was not listed in her bankruptcy schedules because the property had been stolen previously in 2005. (The personal property sheet demonstrates that none of the items were purchased prior to January 2005.) Exhibit No. 8 is a letter written by Lana to the Trustee clarifying her position on the omission of the assets from her bankruptcy schedules. The Debtor clearly stated that she stored her car with a fellow worker in February 2005 and could not recover the car or the property in it until January 2006. Thus, Lana would have this Court believe the property was not in her possession, and thus not listed in the bankruptcy schedules, because it was subject to the "theft" by the fellow worker in February 2005. Lana then changed her testimony and stated that the first theft occurred in 2004.

      Question No. 8 on the Statement of Financial Affairs requires that the Debtors list theft losses which occur within one year prior to the filing of the bankruptcy case. Lana changed her testimony only after she was questioned about why the Statement of Financial Affairs, Question No. 8, did not list the theft. Thus, Lana's changed testimony, that the theft occurred in January 2004, would explain the omission from the Statement of Financial Affairs. It would not, however, correspond to either the date of purchase, listed on the personal property

summary sheet, or her September 28th correspondence to the Trustee.

  6. Under either sequence of events, the Debtors' schedules are incomplete and inaccurate. The Debtor, Lana, agreed that the Order confirming the Debtors' Chapter 13 plan was based upon schedules which were incorrectly prepared.

The Court additionally finds the following facts from Lana ("Lana") Luxford's testimony presented at the trial on January 11, 2007. Lana testified that even though she had filed six bankruptcy cases in approximately twelve (12) years, she was not entirely familiar with the bankruptcy process or requirements. In response to a question by Drummond, Lana stated that she believed she was required to schedule "anything" and "everything" in her possession. She did, however, also state she was aware she needed to list everything "owned and had." She admitted she scheduled everything in her possession but not everything she owned. She admitted that her chapter 13 plan was confirmed, but she was not sure if the unsecured nonpriority creditors would receive any distribution from the plan payments.

She testified to preparing a list of lost and stolen property for her insurance company representative, Ex. 2, and submitted a Flathead County Sheriff's report to her insurance representative, with a cover note to "DeShondra"[6] Ex. 1. She testified that she did not own any horses, but that her daughters and sons owned horses. Ex. 8 does state that she acquired postpetition a horse from her daughter and repaid her daughter with money and other favors. In Ex. 8, Lana states the what was listed in the chapter 13 case as "possessions was accurate at the time it was made." Lana, in Ex. 8, further stated, "We did not intentionally try to omit the saddle from the plan. We didn't even know for sure where it was at the time. We certainly would not

---

[6] DeShondra is correctly spelled Dashondra, for Dashondra Hall, a claims representative for Foremost Insurance.

tell the insurance company we were in a Chapter 13 and claim it as a loss if we thought we had it wrongfully.  It was months before the plan was done that the saddle disappeared with really no hope to recover it and it was four months after the plan was done that the car and saddle was recovered." She testified that most of the property on the insurance claim was also included in Debtors' Schedules. Ex.6.  She testified some tools were not included and that the saddle and gel seat were not.  She testified that the replacement cost of the saddle was $1,950, but that the depreciated value would be $300-$400, or $300-$500.  She testified that the saddle was not listed as it was stolen in 2005 with the Cadillac in South Dakota.  She testified that she did not fill out Question 8 of Debtors' statement of financial affairs because it must have been an error by her and Oleson because I told Oleson but he must have misunderstood.  She testified she could not explain why it took so long to amend the schedules, but that she had told Oleson about the loss.  On cross examination by Oleson, Lana testified that she and Oleson had discussed the saddle but that it had been missing for almost a year.   Also, she testified that the saddle was not in her possession when stolen as it was in her car's truck in South Dakota.  When the car was recovered the saddle was still in trunk.  She also testified that when she and Oleson discussed the saddle Oleson told her that she would not get the saddle back.  On redirect, Lana testified that she listed the car but not the saddle because she had debt on the car and wanted to pay it.

In Ex. 1, the sheriff officer notes that Lana called on July 10, 2006, approximately 2 weeks after the second car theft, and informed the officer that some additional tack items were missing from tack room in the horse trailer.

Pursuant to the exhibits, Debtors acquired approximately five items on the list of lost or stolen items, namely: 2 tape measures, $40; set of 4 pliers, $40; tool kit, $230; saddle, $1,950;

7

and 1 gel seat, $69. Ex. 2, 6. The value on these exhibits are listed at replacement cost based on Lana's testimony. On Schedule B filed on November 9, 2005, doc. no. 10, miscellaneous tools are listed for $150.00; 1993 Cadillac Seville is listed at a value of $1,000. Debtors did not schedule the other items listed above. Also a leather coat acquired in June 2004, is not listed in the Schedules but is listed on the insurance form with a replacement cost of $350, but Lana testified that its value is probably $35.

In considering the list of items allegedly stolen as identified on Ex. 2, the list is much more extensive than what the sheriff's report, Ex. 1, describes as being a car theft and what is later described on the report for July 10, as also including tack. The total replacement cost of the items amount to approximately $8,000. The Court is puzzled by such a discrepancy between what was first identified on the sheriff's report and what was subsequently described on the insurance loss form, dated July 25, 2006. Even if the postpetition property does not need to be added to the Schedules, considerable property has been acquired by Debtors during a time when they are submitting their projected disposable income to Drummond for plan payments. Lana, however, testified that many items were gifts from children. As to the prepetition property, the Court finds that such items may have been located in the trunk of the Cadillac. No testimony exists in the record as to whether Debtors filed an insurance loss claim form after the first theft in February 2005.

The Court notes that Schedule B of the bankruptcy schedules states that "[e]xcept as directed below, [debtor is to] list all personal property of the debtor of whatever kind." The Schedule does not state that debtor is only to list property in debtor's possession. Section 541(a)(1) of the Bankruptcy Code requires a debtor to list "all legal and equitable interests of the

debtor in property as of the commencement of the case. On cross examination, Lana testified that she tried to read all the schedules and the statement of financial affairs but that she had never had a loss before.

Having observed Lana's demeanor while testifying under oath, the statements made by her as to the reasons prior cases were dismissed and the assertion of blame on people other than the Debtors when the dockets for those cases show Debtors also were to blame for the dismissals and in reviewing the evidence, and the extensive efforts undertaken in other cases to amend schedule and to be involved in the bankruptcy process for a substantial portion of time over the last 12 years, the Court finds that Lana's testimony is not completely credible and is entitled to little probative weight without corroboration. *In re Taylor*, 514 F.2d 1370, 1373-74 (9th Cir. 1975); *See also*, *Casey v. Kasal*, 223 B.R. 879, 886 (E.D. Pa. 1998). Debtors presented very little corroborating evidence on any of the issues consider in Drummond's motion to dismiss and Debtors' asserted objections to the dismissal. Accordingly, the Court assigns Lana's testimony little probative weight without corroboration.

## DISCUSSION

Drummond argues that Debtors' case should be dismissed pursuant to 11 U.S.C. § 1307(c) that provides ". . . on request of a party in interest . . . and after notice and a hearing, the court . . . may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." The Court notes that Drummond has not proceeded under 11 U.S.C. § 1330(a) which allows a "party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and hearing, [to request that] the court . . . revoke such order if such order was procured by fraud." The Court confirmed

Debtors' plan on March 22, 2006. Drummond filed his motion to dismiss on October 16, 2006. The 180-day period for pursuing revocation based on fraud expired on September 18, 2006. If the 180-day period had not expired and the Court had found fraud, the Court, pursuant to 11 U.S.C. § 1330(b) could have revoked the confirmation order and disposed of the case under § 1307, unless within a time period fixed by the Court, the debtor proposed and the court confirmed a modification of the plan pursuant to § 1329. Pursuant to § 1330, the Court could have considered a modification to the plan even in the event confirmation had occurred as a result of fraud. Consequently, Drummond has not pursued the relief provided under § 1330, but as pursued a dismissal under § 1307(c).

What then is cause under § 1307(c)? As this is a preBAPCPA case, the Court will consider the statute prior to the amendments effective on October 17, 2005. Ten items of cause are enumerated. The enumerated items, which are not limiting pursuant to 11 U.S.C. § 102((3), do not apply in this case. The Court must consider then what other items may be included in the general term of "cause ." Courts have considered lack of good faith as a cause to dismiss a case. *See* 8 COLLIER ON BANKRUPTCY, ¶ 1307.04[10] (15th ed. rev.).

In considering whether Debtors have pursued actions in this case that warrant dismissal for lack of good faith or for bad faith, the Court must review the "totality of the circumstances". *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1124-25 (9th Cir. 1999). A finding of bad faith does not require fraudulent intent by the debtor. *Leavitt*, 171 F.3d at 1224; *Hungerford*, 19 Mont. B.R. at 130; *Gress*, 257 B.R. at 568. This Court noted in *Gress*:

> [N]either malice nor actual fraud is required to find a lack of good
> faith. The bankruptcy judge is not required to have evidence of
> debtor illwill directed at creditors, or that debtor was affirmatively

>> attempting to violate the law-malfeasance is not a prerequisite to bad faith.
>
> *In re Powers*, 135 B.R. 980, 994 (Bankr.C.D.Cal.1991) (relying on *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986)).
>
> The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court. *In re Leavitt*, 171 F.3d at 1222-23; *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994); *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 1996), aff'd, 120 F.3d 268 (9th Cir.1997).
>
> The same factors govern whether Gress filed his petition or his plans in bad faith. *In re Eisen*, 14 F.3d at 470; *In re Leavitt*, 171 F.3d at 1224.

*Gress*, 257 B.R. at 568, 19 Mont. B.R. at 35.

In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a chapter 13 petition plan was proposed in good faith, a bankruptcy court should consider: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present. *See also Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002). Factor one also is applicable when debtors have failed to completely and accurately identify assets and losses on their schedules and statement of financial affairs.

In addition to being grounds for denial of confirmation, bad faith is "cause" for a dismissal of a Chapter 13 case with prejudice under § 349(a) and § 1307(c), even though not specifically listed. *Gress*, 257 B.R. at 567; *Leavitt*, 171 F.3d at 1224; *Eisen*, 14 F.3d at 470 ("A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)."). In the case *sub judice*, Drummond did not request dismissal with prejudice.

The first *Leavitt* factor is whether the debtor misrepresented facts in her petition [schedules and statement of financial affairs] or plan, unfairly manipulated the Code, or otherwise filed her petition or plan in an inequitable manner.

As noted Debtors' original Schedules omitted six items: pliers, set of 4; tape measure; tool kit; leather coat; saddle; gel seat. Debtors amended their Schedule B to add these items to the originally filed Schedule B on December 28, 2006, doc. no. 53. The original schedule B listed property with a value of $3,615. The amended Schedule B listed property with a value of $2,670. The total value of property now amounts to $6,285. Debtors did not include any information in question 8 of their statement of financial affairs and to this date have not amended question 8 to include information concerning the theft.

Debtors have a right to amend their Schedules under F.R.B.P. 1009(a), and amendment is liberally allowed as a matter of course at any time before a case is closed under Rule 1009(a). *Martinson v. Michael (In re Michael)*, 17 Mont. B.R. 192, 198 (9th Cir. 1998) (citing cases). However, amendment may be denied on a showing of a debtor's bad faith. *Id.*; *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 255-56 (9th Cir. BAP 1988). A debtor is required under F.R.B.P. 1007(b)(1) to file schedules of assets and liabilities, income and expenses, and a statement of financial affairs, prepared as prescribed by the appropriate official forms, under penalty of perjury. A debtor seeking the benefits of Chapter 13 must also carry its burdens. The general right to amend under Rule 1009(a) alone does not excuse misrepresentations and omissions in Schedules signed under penalty of perjury and submitted to the Court. Debtors partial amendments in this case occurred four months after Drummond's first inquiry.

Drummond argues that *In re Wade*, 20 Mont. B.R. 346, 358 (Bankr. D. Mont 2002),

applies in the case *sub judice* based upon the inaccuracies of Debtors' schedules. The Court in *Wade* concluded that debtor misrepresented facts by failing to list an owner of a motorhome as a creditor and the motorhome as an asset and made multiple amendments to Schedules I and J to delete income derived from a debtor's significant other. Debtors in the case *sub judice* admitted scheduling some but not all assets on the Schedules because she did not have "possession" of the assets and did not answer question 8 of Debtors' statement of financial affairs because she did not understand what a loss involved and that she and her attorney must have misunderstood. Considering the significance of the value of the property items initially omitted in relation to the total disclosed assets, as amended, and the failure of Debtors to present any evidence that they filed insurance claims after the first theft in South Dakota even though they quickly filed and aggressively pursued an insurance claim after the second theft, the Court infers and concludes that but for Drummond becoming aware of the insurance claim and recovery effort on prepetition assets after confirmation, Debtors would have never informed or disclosed to Drummond the existence of such property and thus the first *Leavitt* is satisfied.

      Debtors' excuse that they failed to schedule the six items identified above due to the facts the assets were not in their possession and may never be recovered begs the issue. Disclosure of assets is required whether they have value or may not be recovered. Debtors certainly disclosed the stolen 1993 Cadillac and the 1987 Ford that needed work and the 1990 Cadillac that had no transmission and was used only for parts. Even if Debtors and Oleson did not think that the stolen property would ever be recovered, Debtors still needed to described the nature of the loss in question 8 of the statement of financial affairs, so Drummond could inquire with Debtors and Oleson to determine if the estate had some insurance claim arising after the first theft.

Furthermore, Debtors, given the prior five bankruptcy cases, are certainly familiar with the requirements of the bankruptcy process and procedures, given the extensive docket entries in the prior cases. Debtors are represented by an attorney, and so they "can be charged with constructive knowledge of the law's requirements." *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987). As Debtors are charged with constructive knowledge of the law and given their extensive prior involvement in the five prior bankruptcy cases, Debtors' explanation as to why the 6 items were not disclosed and why information was not provided in question 8 of the statement of financial affairs is unsatisfactory and without merit.

 Debtors cannot escape the effect of their failure to correct omissions by suggesting that their attorney told them that the property would never be recovered or that the attorney must have misunderstood either question 8 or the information that should be included. Debtors voluntarily selected Oleson as their attorney of record, and Debtors cannot now avoid the consequences of the acts or omissions of their freely-selected attorney if indeed Debtors and Oleson had discussions about the six items and the first theft and the recovery of assets in January of 2006 and whether any amendments or changes to the proposed plan needed to occur prior to confirmation on March 22, 2007, the date Debtors' plan was confirmed. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993); *Link v. Wabash Co.*, 370 U.S. 626, 633-34 (1962); *Artificial Intelligence Corp. v. Casey (In re Casey)*, 193 B.R. 942, 949 (Bankr. S.D. Cal. 1996).

 In *Leavitt* the court found the first bad faith factor of misrepresentation and inequitable manipulation of the Code by the debtor's failure to fully disclose his assets and financial dealings. *Leavitt*, 171 F.3d at 1225. In the instant case Debtors failed to fully disclose their

assets, and to provide information about a possible theft and loss that may generate a recovery for the Debtors that may augment their bankruptcy property and the distribution required pursuant to their confirmed plan. As in *Leavitt* Debtors ultimately made corrections only after demands by the Trustee were made in August 2006, and September 2007, doc. no. 36 (motion for turnover of insurance records) and 38 (motion for 2004 examination) and a motion to dismiss was filed in October 2006, doc. no. 44. Debtors even responded and requested that the information requested by Drummond be limited. Debtor, in late September 2006, did withdraw the turnover motion. Debtors amendments to Schedule B, but not to question 8 of the statements of financial affairs, were filed on December 28, 2006, four months after Drummond initiated the inquiry for the insurance information. The Court finds that the first bad faith factor is shown by a preponderance of credible evidence.

      The second bad faith *Leavitt* factor is the debtor's history of filings and dismissals. Debtors' rendition of the facts above identify the multiple filings by Debtors since 1994. However, such rendition is misleading as the notes 1 through 5 above discuss. Since 1994, Debtors have confirmed four chapter 13 plans, have received a chapter 7 discharge in another case, and have had four cases dismissed. Since December 9, 1994 through March 29, 2007, [4,493 days (approximately 12.3 years)], Debtors have been in some pending bankruptcy in this District for approximately 2,446 days (6.7 years) and have not been in some pending bankruptcy for approximately 2,047 days (5.6 years). In the last approximately twelve years, Debtors have spent a majority of their time in bankruptcy in this District, even though the testimony confirms that Lana has resided in South Dakota for a portion of this same time period. The Court further identifies in the notes above the inaccuracies contained in Debtors' information concerning their

15

prior filings, although the Court suspects Debtors will attribute those inaccuracies to their attorney, Oleson. The Court concludes base upon the foregoing that even though Debtors have operated under four confirmed chapter 13 plans and have received one chapter 7 discharge, Debtors have failed to complete the terms of any confirmed chapter 13 plan. The Court infers from this evidence that the Debtors are not extremely sincere in completely the burdens associated with a confirmed chapter 13 plan, but certainly enjoy and have enjoyed the benefits of holding their creditors at bay for a majority of the past 12 years. The Court records and the testimony confirm the multiple filings, so the second factor is satisfied.

The third *Leavitt* factor is whether the debtor intended to defeat state court litigation. No evidence exists in the record of any state court litigation. The third *Leavitt* factor is not proven.

Fourth, the Court considers whether egregious behavior is present. In making this determination the Court considers the Debtors' prepetition conduct as well as their postpetition conduct. *In re Pickering*, 195 B.R. 759, 765 (Bankr.D.Mont.1996), citing *In Neufeld v. Freeman*, 794 F.2d 149, 152-53 (4th Cir.1986); *see also Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1134 (4th Cir. 1995).

The Court finds egregious behavior by Debtors present both prepetition and postpetition. The Court finds egregious conduct by Debtors in their failure to disclose the six items of property in the schedules and to provided information on the theft in question 8 of the statement of financial affairs. Debtors only undertook measures to inform Drummond of the insurance claim after he initiated the inquiry and still waited four months to file Schedule amendments. As noted Debtors still have not amended the information originally provided to question 8 of the statement of financial affairs. Debtors must provide all required information to allow Drummond, the

creditors and this Court to adequately and accurately analyze all information that may have a bearing on confirmation and on what distribution may be available to creditors. While this evidence supported a showing of the first *Leavitt* factor, this Court considers it egregious conduct also under the fourth factor. The Court further concludes that the multiple filings discussed in factor two above confirm a failure by Debtors to seriously consider the burdens of completing their confirmed chapter 13 plans, while enjoying the benefits of the automatic stay. Such filings additionally confirm Debtors' egregious conduct toward their creditors by using the protections of the bankruptcy code to prevent such creditors for almost 7 of 12 years from pursuing their remedies when Debtors have failed to complete the terms one of four confirmed plans.

Based upon the above conclusions that bad faith is shown, after consideration, for three out of the four *Leavitt* factors by a preponderance of the evidence, the Court finds and concludes that Debtors filed their Chapter 13 petition, schedules, statement of financial affairs and plan in bad faith and in an effort to unfairly manipulate the bankruptcy process. The Court has the discretion to dismiss this case or to convert this case to a case under Chapter 7. *Gress*, 257 B.R. at 568. Section 1307(c) provides that a court may dismiss or convert a case to a case under Chapter 7, "whichever is in the best interests of creditors and the estate." Drummond has requested dismissal of Debtors' case.

Based upon the above conclusions that bad faith is shown, after consideration, for three (3) of the four (4) *Leavitt* factors, the Court finds that dismissal is justified and within the discretion of this Court. *Gress*, 257 B.R. at 568.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over this case under 28 U.S.C. § 1334(a).

2. The pending matters are core proceedings under 28 U.S.C. §§ 157(b) involving a motion to dismiss Debtors' case and confirmed plan.

3. Debtors failed to satisfy their burden of proof to show that their chapter 13 plan and schedules and statement of financial affairs were filed in good faith when they failed to adequately explain the inaccuracies in their schedules, given the multiple cases that Debtors have filed in the past twelve years.

4. The totality of the circumstances, determined in accordance with *Leavitt*, 171 F.3d at 1224-25, warrants dismissal.

The Court will enter a separate Order consistent with this memorandum of decision providing as follows:

IT IS ORDERED that Trustee's motion to dismiss this case is granted; and that Debtors' objection thereto is overruled.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana